UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| INGRID GARCIA | : | |
| | : | |
| v. | : | C.A. No. 11-174ML |
| | : | |
| MICHAEL J. ASTRUE | : | |
| Commissioner of the Social Security | : | |
| Administration | : | |

## REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

This matter is before the Court for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 405(g). Plaintiff filed her Complaint on April 26, 2011 seeking to reverse the decision of the Commissioner. On September 15, 2011, Plaintiff filed a Motion to Reverse Without Or, Alternatively, with a Remand for a Rehearing the Commissioner's Final Decision. (Document No. 9). On December 19, 2011, the Commissioner filed a Motion for an Order Affirming the Decision of the Commissioner. (Document No. 12)

This matter has been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); LR Cv 72. Based upon my review of the record, the parties' submissions and independent legal research, I find that there is not substantial evidence in this record to support the Commissioner's decision and findings that Plaintiff is not disabled within the meaning of the Act. Consequently, I recommend that the Commissioner's Motion for an Order

Affirming the Decision of the Commissioner (Document No. 12) be DENIED and that Plaintiff's Motion to Reverse Without Or, Alternatively, with a Remand for a Rehearing the Commissioner's Final Decision (Document No. 9) be GRANTED.

## I.      PROCEDURAL HISTORY

Plaintiff filed applications for SSI (Tr. 158-164) and DIB (Tr. 165-168) on June 26, 2008 alleging disability since December 20, 2007.  (Tr. 158).  The applications were denied initially on February 23, 2009.  (Tr. 72-75).  Plaintiff filed a request for reconsideration on March 5, 2009.  (Tr. 76-80).  The reconsideration was denied on July 23, 2009.  (Tr. 81-82, 85-86).  On November 9, 2010, Administrative Law Judge Randy Riley (the "ALJ") held a hearing at which Plaintiff, represented by counsel and assisted by an interpreter, a vocational expert ("VE") and medical expert ("ME") appeared and testified.  (Tr. 29-66).  The ALJ issued a decision unfavorable to Plaintiff on November 19, 2010.  (Tr. 4-23).  The Appeals Council did not complete its review of the claim during the time allowed, therefore the ALJ's decision became final.  (Tr. 1-3).  A timely appeal was then filed with this Court.

## II.      THE PARTIES' POSITIONS

Plaintiff argues that the ALJ's finding that Plaintiff could use her right arm to perform work is not supported by substantial evidence and that his adverse finding as to Plaintiff's credibility is flawed.

The Commissioner disputes Plaintiff's claims and asserts that substantial evidence supports both the ALJ's RFC and credibility findings and thus they must be affirmed.

### III. THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Remand is unnecessary where all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled. Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences. Seavey, 276 F.3d at 8. To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim. Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision. Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council). After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction. Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g). To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause

for failure to submit the evidence at the administrative level. <u>See</u> <u>Jackson v. Chater</u>, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant. <u>Id.</u> With a sentence six remand, the parties must return to the court after remand to file modified findings of fact. <u>Id.</u> The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings. <u>Id.</u>

## IV.   THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505. The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.   Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. <u>See</u> <u>Rohrberg v. Apfel</u>, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported

by objective medical evidence or is wholly conclusory.  See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).  When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion.  20 C.F.R § 404.1527(d).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527(e).  The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner.  20 C.F.R. § 404.1527(e).  See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

**B.      Developing the Record**

The ALJ has a duty to fully and fairly develop the record. Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991). The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained. See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987). The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel. Id. However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty. See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

**C.      Medical Tests and Examinations**

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled. 20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986). In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision. Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

**D.      The Five-step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not

disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f). Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five. Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act. Seavey, 276 F.3d at 5. The claimant must prove disability on or before the last day of her insured status for the purposes of disability benefits. Deblois v. Sec'y of Health and Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c). If a claimant

becomes disabled after she has lost insured status, her claim for disability benefits must be denied despite her disability.  Id.

E.    **Other Work**

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  Seavey, 276 F.3d at 5.  In determining whether the Commissioner has met this burden, the ALJ must develop a full record regarding the vocational opportunities available to a claimant.  Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989).  This burden may sometimes be met through exclusive reliance on the Medical-Vocational Guidelines (the "grids").  Seavey, 276 F.3d at 5.  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant non-exertional factors.  Id.; see also Heckler v. Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is appropriate in cases involving only exertional impairments, impairments which place limits on an individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of work at a given residual functional level or when a claimant has a non-exertional impairment that significantly limits basic work skills.  Nguyen, 172 F.3d at 36.  In almost all of such cases, the Commissioner's burden can be met only through the use of a vocational expert.  Heggarty, 947 F.2d at 996.  It is only when the claimant can clearly do unlimited types of work at a given residual functional level that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy.  See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981).  In any event, the ALJ must make a specific finding as to whether the non-

exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1.    Pain

"Pain can constitute a significant non-exertional impairment."  Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

> (1)    The nature, location, onset, duration, frequency, radiation, and intensity of any pain;
>
> (2)    Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);
>
> (3)    Type, dosage, effectiveness, and adverse side-effects of any pain medication;
>
> (4)    Treatment, other than medication, for relief of pain;
>
> (5)    Functional restrictions; and
>
> (6)    The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986). An individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

## 2. Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. Rohrberg, 26 F. Supp. 2d at 309. A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. See Frustaglia, 829 F.2d at 195. The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case. See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982). If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V. APPLICATION AND ANALYSIS

Plaintiff was forty-three years old on the date of the ALJ's decision. (Tr. 158). She completed the Eleventh Grade in the Dominican Republic (Tr. 33-34) and worked in the relevant past as a cook in a fast-food restaurant, a machine operator and a jewelry packer. (Tr. 199). Plaintiff's date last insured for DIB is September 30, 2012. (Tr. 194). Plaintiff alleges disability

due to a right shoulder chronic regional pain syndrome/reflective sympathetic dystrophy, obesity, depressive disorder and post-traumatic stress disorder. (Tr. 13).

Plaintiff was in a rear-end car accident at a traffic light in Central Falls on December 19, 2007 and has not worked since. (Tr. 39, 248 and 329). Plaintiff's vehicle was hit from behind and then pushed into the vehicle in front of her. (Tr. 268). Prior to the accident, Plaintiff had a consistent record of employment dating back to 1997 when she arrived in the United States. (Tr. 169-174, 177-191 and 199). She suffered a right shoulder sprain, right wrist sprain and a strained neck and back. (Tr. 248-249). Five days later, pain in these injured areas was reportedly mild. (Tr. 269). By December 27, 2007, Plaintiff's objective exam was normal, apart from tenderness in the affected areas. (Tr. 274-275). Plaintiff's prognosis was assessed at fair to good, and she was instructed to treat with ice/hot packs and home exercise. (Tr. 275).

On January 28, 2008, Plaintiff's right shoulder had marked tenderness, and her neck was tender and lacked full range of motion. (Tr. 278). On February 4, 2008, Plaintiff was seen for follow-up and reported feeling slightly better. (Tr. 280). However, reported tenderness and reduced range of motion persisted in Plaintiff's neck, back, right shoulder, right wrist and right hand. Id. Dr. Chang reported, on February 18, 2008, that she was totally disabled from working. (Tr. 282). An EMG on February 25, 2008 ruled out the possibility of right carpal tunnel syndrome. (Tr. 306). On March 31, 2008, dissatisfied with the results from Dr. Chang's treatment, Plaintiff decided to make arrangements to see an orthopedic doctor. (Tr. 286). Upon discharging Plaintiff from care, Dr. Chang noted her final diagnosis as cervical, thoracic and low-back strain with muscle spasm, right shoulder sprain, chest contusion, right wrist sprain and right forearm contusion. (Tr. 287).

On April 25, 2008, Plaintiff presented to the Emergency Room at Rhode Island Hospital complaining of pain in her right arm. (Tr. 310). On exam, her reflexes were normal. Id. She was referred to the orthopedic clinic. (Tr. 311). She was examined on May 21, 2008. (Tr. 317). Plaintiff explained that physical therapy and Motrin had alleviated her pain symptoms but did not completely resolve them. Id. On exam, Plaintiff had some limitation of right arm abduction and had difficulty placing it behind her back, but she had good strength, normal muscle tone and normal neurological function. (Tr. 317-318). The remainder of the objective exam was normal. Id. An MRI was ordered, she was again referred to orthopedics, and she continued to take Motrin. (Tr. 318).

Plaintiff met with an orthopedist on August 8, 2008. (Tr. 319). At that time, her primary complaint was ongoing right arm/shoulder weakness, pain and decreased sensation. Id. An exam of the right upper-extremity revealed weakness, reduced range of motion and decreased sensation. Id. The doctor opined that Plaintiff had either symptoms of reflex sympathetic dystrophy ("RSD") or may have a central cervical spine problem causing the upper-extremity symptoms. (Tr. 319-320). Plaintiff was ultimately referred to a pain clinic to manage her possible RSD. (Tr. 320, 323).

On February 9, 2009, Plaintiff was referred to Dr. Seok Lee by State Disability Determination Services for a consultation report. (Tr. 325). The exam was designed to assess the severity of Plaintiff's complaints of right upper-extremity problems. Id. On exam, Plaintiff was noted to be in acute distress due to right shoulder pain. (Tr. 326). Also, Plaintiff's neck was stiff with marked tenderness and limited range of motion. Id. In addition, her right upper-extremity showed marked tenderness in the shoulder, and she was unable to elevate the shoulder due to pain. (Tr. 327). Finally, there was reduced sensation throughout the right upper extremity. Id. Dr. Lee

assessed right shoulder and right upper-extremity pain associated with paraesthesia and severe weakness. Id. She recommended an updated MRI and another orthopedic consult. Id.

On February 11, 2009, Dr. Henry Laurelli reviewed Plaintiff's medical records pertaining to her right upper-extremity injury and obesity and assessed her physical residual functional capacity ("RFC"). (Tr. 328-335). Dr. Laurelli noted that since Plaintiff's car accident, Plaintiff had no structural damage, and RSD did not appear to be a firm diagnosis. (Tr. 335). Dr. Laurelli noted that Plaintiff was alleging a major disability resulting from a minor accident and injury with uneventful objective test results. (Tr. 333). Consequently, he opined that Plaintiff retained the RFC for light work with frequent climbing, balancing, stooping, kneeling and crouching; occasional crawling; no climbing of ladders, ropes or scaffolds; no exposure to hazards; and no use of the right upper extremity (if the consultative and treating source exam results were valid). (Tr. 328-335).

On February 27, 2009, Dr. Fredrick Harrington performed a right stellate ganglion block to assist with Plaintiff's reported shoulder symptoms and possible RSD. (Tr. 475). Dr. Harrington later reported that this procedure was resolving or addressing Plaintiff's RSD. (Tr. 472). He also found, on examination, that Plaintiff had grossly limited and very painful range of motion of her right shoulder. Id.

On August 20, 2009, Plaintiff was treated by orthopedist Dr. Jonathan Gastel. (Tr. 393). Plaintiff continued to complain of right shoulder pain. Id. On exam, Plaintiff reported extreme shoulder and neck pain with all range of motion testing and refused to participate in any further shoulder testing. Id. Dr. Gastel noted, however, that Plaintiff appeared to use her right arm more freely when distracted and while formal arm testing was not performed. Id. Dr. Gastel noted that Plaintiff's complaints were not inconsistent with RSD, but he found that portions of her physical

exam were "inconsistent and unreliable." (Tr. 394). Plaintiff was referred to Dr. Susan Pollan for pain management. Id.

On September 14, 2009, Dr. Pollan explained that she was not convinced that Plaintiff had RSD due to a lack of signs of vasomotor instability. (Tr. 391). Dr. Pollan was also "puzzled" by the difference between active and passive range of motion during examination. Id.

On October 26, 2009, Dr. Pollan discussed with Plaintiff the benefits of using an interscalene block so that her shoulder could be examined without interference from pain. (Tr. 388). This procedure occurred on November 11, 2009, and Plaintiff was able to fully move her shoulder with manipulative assistance from her orthopedist. (Tr. 397). This revealed that there was no intrinsic stiffness issue with the shoulder itself or "frozen shoulder." (Tr. 382, 384).

On November 30, 2009, Plaintiff continued to complain of right shoulder problems which she displayed on objective exams. (Tr. 382). But again, on passive exam, Dr. Pollan noted greater range of motion in Plaintiff's shoulder and wrist. Id. Dr. Pollan concluded that Plaintiff was not suffering from a frozen shoulder and ordered EMG testing. Id. This EMG testing, performed on December 2, 2009 yielded normal results. (Tr. 395-396).

On March 5, 2010, Plaintiff presented for an initial psychiatric evaluation due to problems with depression. (Tr. 459). She was diagnosed with major depression, recurrent and post traumatic stress disorder. (Tr. 461).

On August 6, 2010, Ms. Laurice Girouard, LICSW, completed an "Emotional Impairment Questionnaire." (Tr. 497). Ms. Girouard noted that she treated Plaintiff since April 2009 for severe symptoms related to depression and PTSD. Id. Ms. Girouard opined that Plaintiff could not sustain full-time work because her mental impairments were disabling. (Tr. 498). She then assessed a

variety of mental limitations. (Tr. 499-500). On this same date, Ms. Girouard, along with Drs. Foster and Davis of Blackstone Valley Community Health Care, co-signed a letter stating that Plaintiff's mental impairments rendered her unable to work and would cause frequent absences if she were required to work. (Tr. 502).

On September 3, 2010, Plaintiff presented to Dr. Motasem Al-Yacoub, a Neurologist, for electrodiagnostic testing due to ongoing complaints of right-side numbness, stiffness, tingling and pain. (Tr. 564). At the time of testing, Plaintiff reported that she could not move her right upper-extremity at all. Id. On exam, Dr. Al-Yacoub noted that Plaintiff displayed poor effort during strength testing, and that the EMG yielded normal results. (Tr. 565). On October 5, 2010, Dr. America A. Foster opined that Plaintiff was unable to work due to an inability to use her right arm. (Tr. 572)

On October 22, 2010, Plaintiff's lawyer arranged for an examination by Dr. Steven G. McCloy, an independent medical examiner. (Tr. 574-582). Dr. McCloy took a personal history from Plaintiff, documented her subjective reports concerning her impairment and reviewed her medical records. (Tr. 574-580). He then conducted a physical exam. (Tr. 580). In relevant part, this exam revealed normal reflexes in Plaintiff's upper extremities; reduced range of motion and weakness of the neck; discoloration of the right upper-extremity; mottling of the skin; cold skin of the right upper-extremity; moistness of the right hand; and that Plaintiff was unable to elevate her right arm at the shoulder joint; no grip strength; and no sensation. (Tr. 580-581). Dr. McCloy then noted that Plaintiff's exam demonstrated eight objective points needed to establish the diagnosis of CRPS. (Tr. 581). He then opined that Plaintiff has no use of her right upper extremity.

## A.    The ALJ's Decision

The ALJ decided this case adverse to Plaintiff at Step 5.  At Step 2, the ALJ found that Plaintiff's right shoulder chronic regional pain syndrome, obesity, depression and PTSD were "severe" impairments as defined by 20 C.F.R. §§ 404.1520(c) and 416.920(c). (Tr. 13).  However, at Step 3, the ALJ concluded that these impairments did not, either singly or in combination, meet or medically equal any of the Listings.  Id.  As to RFC, the ALJ determined that Plaintiff could perform light work except for occasional reaching and gross manipulation with the right upper extremity and that she was limited to performing simple, routine, repetitive tasks. (Tr. 15).  Based on this RFC and expert testimony from the VE, the ALJ rendered a no-disability finding at Step 5 because Plaintiff was found to be capable of performing certain unskilled, light work present in significant numbers in the economy.  (Tr. 22).

## B.    The ALJ's Findings are Not Supported by Substantial Evidence

This appeal centers on the ALJ's RFC finding that Plaintiff is capable of "occasional reaching and gross manipulation with the right upper extremity." (Tr. 15).  Plaintiff contends that the medical evidence of record conclusively shows that she is unable to use her right dominant arm in a work setting and that, according to the VE, such a restriction renders Plaintiff unable to work and thus she is disabled within the meaning of the Social Security Act.  (See Tr. 60).

It is undisputed that the record does not contain any medical opinions concluding that Plaintiff can occasionally use her right upper extremity for work purposes.  On February 9, 2009, Dr. Lee examined Plaintiff for the State Disability Determination Services and found that Plaintiff was "unable to elevate right shoulder because of severe pain" and assessed "right shoulder and right upper extremity pain associated with paraesthesia and severe weakness." (Tr. 327).  On February

11, 2009, Dr. Laurelli, a reviewing consultant, reviewed the medical records and concluded that, if Dr. Lee and the treating sources are correct, then Plaintiff is unable to use her right upper extremity. (Tr. 331). On July 13, 2009, Dr. Bennett affirmed Dr. Laurelli's opinion and indicated from his review of the medical records that Plaintiff has persistent pain, weakness, limitation of motion of right shoulder associated with other right upper extremity symptoms and possible reflex sympathetic dystrophy ("RSD"). (Tr. 375). Finally, Dr. McCloy, a certified ME retained by Plaintiff, examined Plaintiff on October 22, 2010 and reviewed the medical records, and concluded that she has "no use of her right upper extremity" from a work capacity standpoint. (Tr. 581). He also noted that Plaintiff has "substantial chronic pain consistent with CRPS I [complex regional pain syndrome type 1] in the right upper extremity." Id. Dr. Kaplan, a physician Board-certified in internal medicine and rheumatology, testified as a medical expert before the ALJ. (Tr. 43). While Dr. Kaplan testified to the presence of "some marked inconsistencies in the record," he never opined that Plaintiff was occasionally able to use her right arm for work as found by the ALJ. (Tr. 43-58).

Although Defendant concedes that there is no medical opinion supporting occasional use of Plaintiff's right arm for work, Defendant contends that the ALJ permissibly used "common-sense" in assessing Plaintiff's RFC given her credibility and activities of daily living. (Document No. 12 at pp. 2-3). The ALJ discounted Plaintiff's credibility and found that her impairments "were not nearly as limiting as she professed." (Tr. 21). However, in discussing the evidence upon which he based his conclusions as to credibility, the ALJ misinterprets some of the evidence. For instance, the ALJ indicates that "[w]hile [Plaintiff] testified she underwent an injection with an inability to speak for three days, there was no mention of this to the doctor that performed it." (Tr. 19). This statement is inaccurate in two respects. First, while Plaintiff testified that she remembered receiving

the injection and that it helped a "little bit," she did not testify about the inability to speak as indicated by the ALJ. (Tr. 48). Rather, it was Dr. Kaplan, the ME, who testified that "the injection was somewhat traumatic because she couldn't talk for three days after the injection, so she had a kind of reaction, apparently, that's what the chart indicates." Id. (emphasis added). Second, although there is no mention of the incident in Dr. Harrington's record, his records are limited to a total of three pages (Tr. 472-474), and there is a notation in Dr. Foster's treatment records in which Plaintiff told him that she "saw Dr. Harrington in the past [and] the injection hurt but [she] was very afraid because [she] could not talk x 3 days after the procedure." (Tr. 539).

The ALJ also questioned Plaintiff's credibility by indicating that she reported the 2007 accident "as increasingly severe when initial records reveal a very low speed accident yet by September of 2010, she was describing a pile-up accident." (Tr. 20). Although the accident is described differently by different treatment providers over time, they generally describe a three-car accident with Plaintiff driving the middle car. Dr. Al-Yacoub, refers to the accident as a "pile up accident in Central Falls." (Tr. 564). There is no indication whether or not Plaintiff actually used the term "pile up" in describing the accident to Dr. Al-Yacoub or if that was the short-hand description assigned to her general description by Dr. Al-Yacoub.[1] Further, while a "pile up" is commonly used to describe a serious multi-vehicle freeway accident, it is not unreasonable for someone to describe a three-car, rear-end accident as a "pile up." In any event, the single use of the term "pile up" in one of Dr. Al-Yacoub's treatment notes does not, of itself, suggest exaggeration by Plaintiff and is simply not probative of Plaintiff's credibility.

---

[1] Plaintiff does not speak English, making communication with physicians difficult at times. For instance, Dr. Lee noted the presence of a "language barrier" which made history taking "longer than usual" and created a "limitation on obtaining complete history." (Tr. 325).

The ALJ also discounted Plaintiff's credibility as to her limitations because of the presence of "many inconsistencies on examination." (Tr. 21). The ALJ found that Plaintiff has chronic regional pain syndrome ("CRPS") in her right shoulder. (Tr. 13). CRPS (also known as Reflex Sympathetic Dystrophy) is a "chronic pain syndrome most often resulting from trauma to a single extremity." Social Security Ruling 03-2p, 2003 WL 22399117 (Oct. 20, 2003). "It is characteristic of this syndrome that the degree of pain reported is out of proportion to the severity of the injury sustained by the individual"[2] and "conflicting evidence in the medical record is not unusual in cases of RSDS due to the transitory nature of its objective findings and the complicated diagnostic procedure involved." Id. at *1, *5. After reviewing the medical records, Dr. Kaplan testified that "it's certainly possible that [Plaintiff] has some degree of RSD" and the condition "can be progressive." (Tr. 56-57). He also described RSD as typically being "very painful" and "if it progresses beyond that, you can lose function because you get the weakness of the bones and you get the inability to use the muscles of the arm." (Tr. 56). Both Dr. Cielo, a treating Neurologist, and Dr. McCloy, a certified ME, observed diminished muscles in the right shoulder as compared to the left. (Tr. 570, 574). However, the ALJ, in discounting the weight of Dr. McCloy's findings, inaccurately indicates that he was the "only source to assess atrophy." (Tr. 20). Further, the ALJ also attacked Dr. McCloy's findings by noting that he opined that Plaintiff "could use the left upper extremity in a one-handed job." Id. However, there is absolutely nothing inconsistent with Dr.

---

[2] Dr. Laurelli questioned a diagnosis of RSD in part because Plaintiff was alleging a major disability arising from a minor injury (Tr. 333, 335). However, SSR 03-2p specifically recognizes that possibility in cases involving RSD.

McCloy's conclusion that Plaintiff had full use of her left shoulder for work but not her injured right shoulder. (Tr. 581).[3]

Finally, the ALJ concluded that the medical findings of marked weakness were "not consistent" with indications that Plaintiff gave poor effort on examinations. (Tr. 21). While Dr. Al-Yacoub indicated that Plaintiff " lean[ed] forward during testing strength which...supports poor effort and give way weakness," (Tr. 565), Dr. Kaplan testified that "what she does is, and he describes, Dr. Al-Yacoub, so-called give way weakness, which you basically press down and then when the pain becomes too severe, you push down." (Tr. 58). Giving way in response to severe pain is not inconsistent with findings of marked weakness.

This is a complicated case with a record ambiguous even to the physicians. While it is not this Court's role to second-guess the ALJ in close cases or to engage in fact-finding as to credibility issues, there are enough unanswered questions and inaccuracies in the ALJ's decision to warrant a second look at this case on remand. In particular, the ALJ placed significant weight on Plaintiff's lack of credibility in assessing her RFC but, as detailed above, some of the ALJ's factual findings in that regard are simply inaccurate when compared closely to the evidentiary record.

## VI. CONCLUSION

For the reasons discussed herein, I recommend that the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Document No. 12) be DENIED and that Plaintiff's Motion to Reverse Without Or, Alternatively, with a Remand for a Rehearing the Commissioner's Final Decision (Document No. 9) be GRANTED. Further, I recommend that Final Judgment enter

---

[3] While Dr. McCloy suggested Plaintiff could "conceivably" perform a one-handed job with her left arm, the VE made clear that Plaintiff would not be qualified to perform any jobs without any use of her dominant right arm. (Tr. 60).

in favor of Plaintiff remanding this case for further administrative proceedings consistent with this opinion.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its receipt.  See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
January 17, 2012